IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In Re: § | Chapter 7 | |
| Douglas Kevin Smith, § | | |
| *Debtor*. § | Case No. 5:20-bk-50578-rbk | |
| § | | |
| Douglas Kevin Smith, § | | |
| *Appellant*, § | | |
| v. § | Case No. 5:23-cv-194-XR | |
| § | | |
| Eric B. Terry, Chapter 7 Trustee, § | | |
| MedLegal Solutions, Inc. d/b/a Atticus § | | |
| Medical Billing, Inc., § | | |
| *Appellees*. § | | |

**ORDER**

On this date, the Court considered Appellant Dr. Douglas K. Smith's appeal from an order of the Bankruptcy Court on February 8, 2023, granting the joint motion under FED. R. BANKR. P. 9019 to approve the compromise and settlement by and between MedLegal Solutions, Inc. d/b/a Atticus Medical Billing, Inc. ("MedLegal") and the Trustee (the "Order Approving Compromise"). The Court has considered the record, applicable law, and the parties' Briefs, including Appellant's Brief (ECF No. 7), Appellee's Brief (ECF No. 8), and Appellant's Reply Brief (ECF No. 9). For the reasons stated below, the appeal is **DISMISSED**.

**BACKGROUND**

This is a *pro se* appeal of the Bankruptcy Court's Second Amended Order granting Appellees' joint motion under FED. R. BANKR. P. 9019 to approve the compromise and settlement of their adversary proceeding, entered on February 8, 2023. ECF No. 1-2 at 3–9 (the "Order").

Appellant Dr. Douglas K. Smith ("Dr. Smith") is a Texas-licensed physician and radiologist, who founded Salubrio in 2013. *See In re Smith*, No. 21-CV-1135-XR, 2022 WL

16825195, at *1 (W.D. Tex. 2022), *aff'd* 2023 WL 4992835 (5th Cir. Aug. 4, 2023). Salubrio provided radiology services, including diagnostic MRI examinations, to patients asserting personal injury claims against third parties. *Id.*

I.  **Salubrio and MedLegal enter into a Lien Advance Agreement**

In June 2016, Salubrio entered into a Lien Advance Agreement (the "Agreement") with MedLegal, under which MedLegal advanced cash to Salubrio in exchange for a security interest in certain accounts receivable (the "Collateral") generated through Salubrio's radiology business. *See* ECF No. 3-4 at 140–59 (Agreement and related exhibits).

The Agreement consists of two components, funding and servicing. The funding component of the Agreement allowed Salubrio to be paid up front for its services so that it could continue operating without waiting for payment until each patient's personal injury claims were resolved—either through a settlement or a trial verdict. ECF No. 3-6 at 1080. The servicing component granted MedLegal authority to service and collect the accounts against which it advanced cash and to charge fees for its servicing and collection efforts. *Id.* at 1079–80.

From approximately June 2016 to September 2018, Salubrio made requests for funding from MedLegal, and MedLegal advanced funds to Salubrio totaling approximately $2 million, covering over 5,700 invoices to patients. *Id.*

II.  **MedLegal initiates arbitration and state court proceedings against Salubrio**

In November 2018, after learning that Salubrio, through Dr. Smith, may have diverted portions of its Collateral, MedLegal initiated arbitration proceedings against Salubrio under the Agreement. *Id.* at 1080. Over six months into the arbitration process, Salubrio sought to dismiss the arbitration, arguing that MedLegal was not a party to the Agreement, based on the fact the

Agreement was executed on behalf of Atticus Medical Billing, Inc. ("Atticus"), MedLegal's fictitious name on file with the Texas Secretary of State.[1] *Id.*

Thus, in August 2019, the parties agreed to abate the arbitration proceedings, and MedLegal filed an action against Salubrio in the 459th Judicial District Court of Travis County, Texas (the "State Court Litigation"), seeking a declaration that the arbitration provisions of the Agreement were enforceable and damages. *Id.* at 1080–81; ECF No. 3-4 at 15–31. Salubrio filed an answer and asserted various counterclaims against MedLegal, which were verified by Dr. Smith in his capacity as President of Salubrio. ECF No. 3-4 at 32–49. In November 2019, Salubrio moved for partial summary judgment in the State Court Litigation, asking the state court to enter judgment that MedLegal was not a party to the Agreement and arguing that the dispute was not arbitrable.[2] ECF No. 3-6 at 1081; ECF No. 3-4 at 190–287. The state court denied the motion in February 2020. ECF No. 3-4 at 361.

### III.  Salubrio Files for Bankruptcy

A month after the state court denied summary judgment, Salubrio filed its voluntary petition for relief under Chapter 11, Subchapter V of the Bankruptcy Code in the bankruptcy case styled *In re Salubrio, LLC*, No. 20-50578-RBK, in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division. *In re Smith*, 2022 WL 16825195, at *1. Pursuant to Bankruptcy Code §§ 1107(a) and 1108, Salubrio operated as a debtor-in-possession until June 10, 2020, when Salubrio was removed as a debtor-in-possession under Chapter 11 for cause. *Id*. On September 23, 2020, Salubrio's bankruptcy case was converted to a Chapter 7 bankruptcy case,

---

[1] As Dr. Smith acknowledges in his opening brief, he continued to operate under the Agreement with MedLegal, despite his refusal to sign an amendment identifying MedLegal as the lien manager. *See* ECF No. 7 at 16.

[2] While Salubrio's motion for summary judgment was still pending, Dr. Smith filed a separate arbitration *pro se* on behalf of Salubrio against MedLegal. ECF No. 3-6 at 1081. The arbitrator entered an order staying the arbitration given the pending declaratory judgment action in the State Court Litigation. *Id.*

and Appellee Eric Terry ("Terry") was appointed as the Chapter 7 Trustee ("Trustee") of Salubrio's bankruptcy estate. *Id*.

Based on Salubrio's schedules—signed by Dr. Smith as President under penalty of perjury and filed in Salubrio's bankruptcy case—Salubrio owns little physical personal property, and its primary assets consist of accounts receivable. ECF No. 3-5 at 501–03, 527. Salubrio's balance sheet, filed with its Voluntary Petition, lists approximately $12 million in accounts receivable as assets of Salubrio. *Id.* at 31. Other than accounts receivable, the Debtor's schedules and balance sheet reflect assets consisting of cash on hand, certain computer equipment, and certain intangibles and intellectual property. *Id*.

As of the Petition Date, Salubrio had repaid MedLegal or MedLegal had collected accounts totaling approximately $2 million. ECF No. 3-6 at 1080. MedLegal asserted that Salubrio owed an outstanding debt of at least $1,501,467.39 (the "MedLegal Claim"). *Id.* at 1079.

**IV.   Salubrio removes the State Court Litigation to Bankruptcy Court**

Salubrio subsequently removed the State Court Litigation to the Bankruptcy Court, initiating Adversary Proceeding No. 20-05019 (the "Adversary Proceeding"). *See* ECF No. 3-6 at 1081, ECF No. 3-4 at 6–12. After the removal, MedLegal and Salubrio amended their claims and counterclaims against each party in the Adversary Proceeding. ECF No. 3-4 at 394–522; *id.* at 523–95.

Generally speaking, MedLegal asserted claims against Salubrio for declaratory relief, breach of contract, fraud, quantum meruit, money had and received, conversion, and for collection of attorneys' fees and costs. ECF No. 3-4 at 523–59. Salubrio asserted claims and counterclaims against MedLegal for declaratory judgment, attorneys' fees, avoidance of fraudulent transfers, turnover and accounting of estate funds, determination of secured status, and objection to the

4

MedLegal Claim. *Id.* at 394–433. MedLegal denied liability for the counterclaims Salubrio asserted against it and contended that the claims had been filed in bad faith. ECF No. 3-6 at 1081. Salubrio asserted counterclaims against MedLegal, with the Trustee standing in Salubrio's shoes for the purposes of the litigation. *Id.* at 1081.

Among other things, the Trustee disputed the alleged amounts owed to MedLegal and MedLegal's assertion that it held a validly perfected secured claim against Salubrio's bankruptcy estate. *Id.* at 1082. Specifically, the Trustee argued that MedLegal's security interest in the Salubrio's accounts receivable was not perfected because the financing statement had been filed in the wrong state and that MedLegal was thus an unsecured creditor. MedLegal contended that Salubrio (presumably through Dr. Smith) had fraudulently represented in writing that it was a Texas limited liability company and that MedLegal had relied upon this representation when it filed the UCC Financing Statement in Texas instead of Nevada. ECF No. 3-6 at 1219–23.

**V.   MedLegal and the Trustee reach a settlement in the Adversary Proceeding**

Following many months of arms-length negotiations, the Trustee reached an agreement with MedLegal to settle all claims asserted in the Adversary Proceeding. ECF No. 3-6 at 1078–87. In full settlement of MedLegal's claims, including the MedLegal Claim and the claims asserted in the Adversary Proceeding, the Trustee agreed to (i) pay to MedLegal, on behalf of Salubrio's bankruptcy estate, $140,000.00 on or before June 30, 2023, and (ii) allow MedLegal a general unsecured claim against Salubrio's bankruptcy estate in the amount of $300,000.00. ECF No. 3-6 at 1082.

As part of the settlement, Trustee and Salubrio agreed to a full and complete release to the maximum extent possible, of any and all claims of any nature which may have been held directly or derivatively by Salubrio and/or the Trustee against MedLegal, and MedLegal agreed to a full

and complete release to the maximum extent possible, of any and all claims of any nature which may have been held by MedLegal against the Trustee and/or Salubrio, including dismissal of all pending but abated arbitrations. *Id.* In addition, it was agreed that MedLegal would retain, on a final basis, payments totaling $60,000.00 made by the Trustee to MedLegal pursuant to an earlier agreement and mooting MedLegal's motion for relief from the automatic stay. *See* Bankruptcy Docket, ECF No. 622 (Interim Agreed Order Regarding MedLegal Solutions, Inc. d/b/a Atticus Medical Billing Inc.'s Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) and Waiver of 30-Day Hearing Requirement of § 362(e)); *id.*, ECF No. 600 (MedLegal's motion for relief from automatic stay).

**VI.     The Bankruptcy Court approves the Settlement over Dr. Smith's objections**

On November 21, 2022, Trustee and MedLegal filed a joint motion under FED. R. BANKR. P. 9019 to approve the compromise and settlement they had negotiated. ECF No. 3-6 at 1078–87 ("Motion to Compromise"). Dr. Smith filed an objection, asserting that (1) the declaratory judgment action as to Salubrio and MedLegal's contractual relationship had not been decided, (2) MedLegal had falsely claimed to be a secured creditor of Salubrio's bankruptcy estate, and (3) fraud-on-the-court had occurred. *Id.* at 1098–1104. Dr. Smith also complained about the Trustee's and Bankruptcy Court's handling of the bankruptcy case and the Adversary Proceeding. *Id.* No other parties-in-interest or creditors in Salubrio's bankruptcy case objected to the Motion to Compromise.

On December 13, 2022, the Bankruptcy Court held a hearing on the Motion to Compromise. *Id.* at 1113–1236. During the hearing, the Trustee testified, via proffer, regarding his experience and qualifications, the background of the Adversary Proceeding, the claims and counterclaims asserted therein, estimates of legal fees and costs to be incurred by Salubrio's

bankruptcy estate in the event the case was not settled, and his opinion that the proposed settlement was fair and equitable and in the best interest of Salubrio's estate. *Id.* at 1146–62. The Trustee testified that the litigation would involve a three- to five-day trial, which would not proceed for many months and would cost between $322,300 and $545,450 in legal fees. *Id.* at 1156–62. Dr. Smith made a *pro se* appearance at the hearing in his individual capacity and was afforded an opportunity to present his arguments and any supporting evidence to the Bankruptcy Court. *Id.* at 1137–39, 1144–46, 1225–31. Dr. Smith was permitted to cross and recross examine the Trustee. *Id.* at 1162–1204, 1208–14.

The Bankruptcy Court concluded that it was a proper exercise of the Trustee's business judgment to settle and compromise with MedLegal on the terms proposed. *Id.* at 1231–34. If the parties litigated the Adversary Proceeding's claims and counterclaims, the Bankruptcy Court reasoned, MedLegal's Claim could be zero or treated as a completely unsecured claim. *Id.* at 1234. On the other hand, MedLegal could end up with a secured claim against Salubrio's bankruptcy estate for the entire $1.5 million. *Id.* Given the considerable time, effort, and expense of going to trial and the possibility that it would result in a large, secured claim against Salubrio's estate, the Bankruptcy Court found that the arm's-length settlement was in the best interest of the creditors. *Id.* at 1231–34. The Bankruptcy Court subsequently entered the Order approving the compromise, ECF No. 1-2 at 3–9, the subject of this appeal.

## APPELLANT'S ISSUES ON APPEAL

Appellant's Brief lists 20 issues raised on appeal:

1. Whether the Bankruptcy court erred by concluding that Notice given of the Motion to Compromise was reasonable and sufficient in light of the circumstances and nature of the relief requested, and no other or further notice of the Motion is necessary?

2. Whether the Bankruptcy Court erred or abused its discretion by concluding that a reasonable and fair opportunity to object to the Motion

7

       with respect to the relief granted in this Order has been afforded under the circumstances?

3. Whether the Bankruptcy Court erred or abused its discretion and compromised Parties affected by Declaratory Judgment by approving Compromise of Declaratory Judgment without compelling Plaintiff MedLegal to enjoin ALL PARTIES affected as required by section 37.006(a) of Texas Declaratory Judgment Act ("TXDJA") and Uniform Declaratory Judgment Act ("UDJA")?

4. Whether the Bankruptcy Court erred or abused its discretion by overruling the Objection filed by Douglas K. Smith [Docket No. 856] for the reasons stated on the record at the Hearing held on the Motion?

5. Whether the Bankruptcy Court erred or abused discretion by concluding that no proof of Fraud-on-the-Court was presented during the hearing regarding Trustee's Rule 9019 Compromise?

6. Whether the Bankruptcy Court erred or abused its discretion and prejudiced the due process rights of Creditors and Parties affected by disregarding due process requirements of Rule 9014, L Rule 9014, Rule 9019, and L Rule 9019?

7. Whether the Bankruptcy Court erred or abused its discretion by protecting Fiduciary Terry from answering Dr. Smith's cross-examination questions to his knowledge of seizure and sequestration of evidence from Dr. Smith's medical office as lacking relevance to Trustee's Compromise?

8. Whether the Bankruptcy Court erred or abused discretion by ruling that non-physician Debtor Salubrio was legal owner of medical records of Dr. Smith's medical practice?

9. Whether the Bankruptcy Court prejudiced U.S. Trustee, Texas Attorney General, Health and Human Services, Department of Justice Office of Inspector General ability to protect privacy of confidential medical records of thousands of Dr. Smith's patients by failing to Notice of hearing on Trustee's Compromise?

10. Whether the Bankruptcy Court erred or abused its discretion by concluding the Court had no reason to question the Trustee's business judgement on Motion to Compromise?

11. Whether the Bankruptcy Court prejudiced Dr. Smith's Objection to Compromise by not providing opportunity for Dr. Smith to offer the Binder of Exhibits timely submitted and in Court's possession at time of hearing?

12. Whether the Bankruptcy Court erred or abused its discretion by acknowledging Dr. Smith's position that MedLegal had no valid Claim because of MedLegal's Fraud-on-the-Court contained in evidence offered by MedLegal during the hearing?

13. Whether the Bankruptcy Court erred or abused its discretion by disregarding the Opinion of Salubrio's healthcare compliance expert MB Lawhon?

14. Whether the Bankruptcy court erred or abused its discretion by approving Trustee's Compromise in contravention of bankruptcy absolute priority rule?

15. Whether the Bankruptcy Court erred or abused its discretion by compromising or prejudicing property rights of legal owner Texas Licensed Physician Accounts Receivables ("TXLPAR")?

16. Whether the Bankruptcy Court erred or abused its discretion by approving Compromise that circumvented Rule 7001(2) & (9) requirements of adjudication of MedLegal's disputed claim and Declaratory Judgment respectively by adversary proceeding?

17. Whether the Bankruptcy Court erred or abused its discretion by approving Compromise of threshold Declaratory Judgment without requiring Plaintiff MedLegal to Enjoin ALL PARTIES affected as required by section 37.006(a) of Uniform Declaratory Judgment Act?

18. Whether the Bankruptcy Court erred or abused its discretion by concluding that Trustee's Compromise of privacy rights of Dr. Smith's patients was "fair and just" and displayed sound business judgment in best interest of estate?

19. Did the Bankruptcy Court err or abuse discretion by approving Compromise Order in contravention of Bankruptcy Absolute Priority Rule ("APR") prejudicial Creditors with valid and perfected security interest?

20. Did the Bankruptcy Court err or abuse judicial discretion by requiring Dr. Smith, testifying in his personal capacity, to answer questions on behalf of the corporate entity Salubrio?

ECF No. 6 at 10–13.

**DISCUSSION**

I.  **Appellate Standard of Review**

A district court has jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges entered in cases and proceedings referred to bankruptcy judges. *See* 28 U.S.C. § 158(a). On appeal, a bankruptcy judge's conclusions of law are reviewed *de novo*, whereas findings of fact will not be set aside unless they are found to be clearly erroneous. *In re National Gypsum Co.*, 208 F.3d 498, 503 (5th Cir. 2000). The district court reviews mixed questions of law and fact *de novo*. *Id*.

The district court reviews discretionary decisions of the bankruptcy court, including approval of a settlement agreement, for abuse of discretion. *See Mendoza v. Temple-Inland Mortgage Corp. (In re Mendoza)*, 111 F.3d 1264, 1270 (5th Cir. 1997); *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995). A bankruptcy court abuses its discretion when "its ruling is based on an erroneous review of the law or on a clearly erroneous assessment of the evidence." *In re Yorkshire, LLC*, 540 F.3d 328, 331 (5th Cir. 2008) (quoting *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995)).

II.  **Analysis**

Appellees contend that Dr. Smith's appeal is frivolous and that he lacks standing to appeal the Bankruptcy Court's Order regarding the settlement between Trustee and MedLegal because he is not a creditor of Salubrio's bankruptcy estate. ECF No. 8 at 23–26. Appellees argue that, because both the accounts receivable and Salubrio's causes of action against MedLegal are owned by Salubrio's bankruptcy estate, Dr. Smith cannot show that he has any pecuniary interest at stake. ECF No. 8 at 21. The Court agrees.

Bankruptcy courts are not created by Article III of the Constitution and thus are not necessarily bound by traditional standing requirements. *In re Coho Energy Inc.*, 395 F.3d 198, 202 (5th Cir. 2004). Previous versions of the Bankruptcy Code provided that to have standing to appeal a bankruptcy court's order, one must be a "person aggrieved" by the order of a bankruptcy referee. 11 U.S.C. § 67(c) (1976). This provision has since been omitted from the Code, but the "person aggrieved" test has survived as the baseline for standing in bankruptcy appeals in many circuits, including the Fifth Circuit. *In re Coho*, 395 F.3d at 202. This test is more exacting than traditional constitutional standing and requires a stronger causal nexus between act and injury. *Id.* Thus, this inquiry asks whether an appellant was "directly and adversely affected pecuniarily by the order of the bankruptcy court." *Id.* (internal quotations omitted).

Dr. Smith lacks standing to bring this appeal because he cannot show he has been "directly and adversely affected pecuniarily" by the Order Approving Compromise. It is undisputed that Dr. Smith did not file a proof of claim in Salubrio's bankruptcy case. Moreover, Salubrio's schedule of assets—signed by Dr. Smith as President under penalty of perjury and filed in Salubrio's bankruptcy case—listed the accounts receivable of Salubrio as the property of Salubrio. ECF No. 3-5 at 501–08.

Nonetheless, Dr. Smith insists that he retained an equitable interest in the accounts receivable through a "Trust" held by Salubrio for his benefit. *See, e.g.*, ECF No. 7 at 21–22. Dr. Smith has raised this argument repeatedly in his personal bankruptcy proceedings, in Salubrio's bankruptcy case, and in his numerous appeals; it has been soundly rejected by every court to consider it. *See, e.g.*, *In re Salubrio, LLC*, No. BR 20-50578-RBK, 2022 WL 3142366, at *2 (W.D. Tex. Aug. 5, 2022) (dismissing appeal for lack of bankruptcy standing), *appeal dismissed sub nom. Matter of Salubrio, L.L.C.*, No. 22-50764, 2023 WL 3903989 (5th Cir. Mar. 8, 2023*), cert. denied*

*sub nom. Smith v. Terry*, 144 S. Ct. 95 (2023); *In re Smith*, 2022 WL 16825195, at *4 (affirming dismissal of adversary proceeding based on lack of standing). Appellants dispute any assertion that "Dr. Smith is a 'Salubrio Trust Settlor,' that any entities Dr. Smith owns or controls are 'Trust Beneficiaries,' that Salubrio served as a trustee for the equitable interests of Dr. Smith, and that Dr. Smith retained ownership of the accounts receivable." ECF No. 8 at 20. As Appellants correctly point out, "[t]here is absolutely no evidence in the record on appeal of any trust agreement or other written agreement naming Salubrio as a trustee and placing any items of property in a so-called 'Salubrio Trust.'" *Id.*[3]

Dr. Smith presented the "Salubrio Trust" issue squarely in an adversary proceeding he initiated against Salubrio under his personal bankruptcy case. *See In re Douglas Kevin Smith*, No. 21-BK-50519-RBK; Adversary Proceeding No. 21-5084-RBK. His complaint alleged claims against Salubrio for breach of contract, gross negligence, malicious prosecution, promissory estoppel, unjust enrichment, breach of fiduciary duty, and sworn account, seeking to recover over $11 million in accounts receivable from the estate. The Bankruptcy Court granted the Trustee's motion to dismiss Dr. Smith's complaint in whole for multiple reasons, including the absence of a proof of claim, lack of standing, and judicial estoppel. *See* Adversary Proceeding No. 21-5084-RBK, ECF No. 25, Hr'g Tr. at 16:22–18; *id.*, ECF No. 16 at 1.

---

[3] More broadly, Appellees observe that many of the purported factual assertions contained in Appellant's initial brief are not supported by references to the record below as required by FED. R. APP. P. 28(a)(6). The Court does not consider any facts unsupported by the record or outside of the record on appeal. *See Holmberg v. Baxter Healthcare Corp.*, 901 F.2d 1387, 1392 n.4 (7th Cir. 1990) (striking portions of brief referring to facts outside the record); *Moore v. FDIC*, 993 F.2d 106, 107 (5th Cir. 1993) (dismissing appeal for failure to specify to the record); Fifth Circuit Local Rule 28.2.2 ("Every assertion in briefs regarding matter in the record must be supported by a reference to the page number of the original record, whether in paper or electronic form, where the matter is found[.]"). This approach is not punitive; it is simply mandated by the nature of the Court's appellate posture. A district court cannot ascertain whether the bankruptcy court abused its discretion or made clearly erroneous factual findings without reference to the underlying record. After all, the question at hand is whether the bankruptcy court erred *in light of the evidence before it*. It is not the Court's responsibility to scour the record for evidence supporting Appellant's factual assertions: "[j]udges are not like pigs, hunting for truffles buried in the record." *United States v. del Carpio Frescas*, 932 F.3d 324, 331 (5th Cir. 2019) (per curiam) (quoting *Albrechsten v. Bd. of Regents of Univ. of Wisc. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002)).

The Trustee addressed Dr. Smith's "Salubrio Trust" theory in its motion to dismiss in detail:

> Plaintiff, through the Complaint, continues to double-down on his completely disingenuous story about the purported Salubrio Trust, which would essentially be an oral self-settled trust created by Plaintiff. Trustee, in numerous proceedings, has consistently disputed the allegations that Plaintiff and any entities that Plaintiff owns or controls are trust beneficiaries or own any equitable interests in accounts receivable through a "Trust" held by Salubrio. There is absolutely no evidence in the record of any trust agreement or other written agreement naming Salubrio as a trustee and placing any items of property—much less the accounts receivable—in a so-called "Salubrio Trust." Notably, Plaintiff did not attach the alleged trust agreement or intercompany agreements to his Complaint in support of his statements on this issue.
>
> This Court and Trustee have questioned Plaintiff about the alleged Salubrio Trust and any evidence of same *ad nauseam*, and have only been met with evasive responses and no evidence. There is no disclosure of this alleged trust anywhere in Salubrio's bankruptcy schedules, signed under penalty of perjury by Plaintiff, or any disclosure of any obligations Salubrio would have arising from the alleged trust. Dkt. # 44, Case No. 20-50578. Further, in Salubrio's statement of financial affairs that he signed under penalty of perjury, Plaintiff did not disclose in Part 11 that there existed any trust containing "property held for another." *Id.* Given the record before the Court and Plaintiff's own representations under penalty of perjury, it is factually and legally implausible that the so-called "Salubrio Trust" exists.
>
> In any event, Plaintiff should be judicially estopped from making such arguments and claims based upon the record before this Court. *In re Coastal Plains*, 179 F.3d 197, 205–06 (5th Cir. 1999) ("Because the doctrine is intended to protect the judicial system, rather than the litigants, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary. . . . The doctrine is generally applied where "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.") (citations omitted).

*Id.*, ECF No. 7 ¶¶ 35–37 (citations omitted).

The Bankruptcy Court concluded that the accounts receivable belonged to the estate and that Dr. Smith was judicially estopped from arguing otherwise, having sworn under oath in Salubrio's schedules that he did not own the accounts receivable and was not a creditor of the

13

estate. *Id.*, ECF No. 25, Hr'g Tr. at 16:22–18; *id.*, ECF No. 16 at 1; *In re Smith*, 2022 WL 16825195, at *4 (affirming dismissal of adversary proceeding based on lack of standing).

Dr. Smith has not presented any credible reason to disturb the Bankruptcy Court's previous conclusions as to the ownership of the accounts receivable or the settlement approval at issue in this case. Dr. Smith's mere disagreement with the Trustee's decision to settle the estate's claims against MedLegal does not render him a "person aggrieved" for purposes of appeal. The decision to settle claims that are property of Salubrio's bankruptcy estate is exclusively within the Trustee's power. *See In re Educators Grp.*, 25 F.3d 1281, 1284 (5th Cir. 1994) ("If a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim."). Dr. Smith simply does not have standing to challenge the Bankruptcy Court's order approval of a settlement affecting claims and assets in which he has no interest. Because Dr. Smith lacks bankruptcy standing, the Court does not address the merits of his appeal. *Fortune Nat. Res. Corp. v. U.S. Dep't of Interior*, 806 F.3d 363, 367 (5th Cir. 2015).

## CONCLUSION

For the foregoing reasons, the Court **DISMISSES** this appeal for Appellant's lack of standing to challenge the Bankruptcy Court's order approving the compromise and settlement by and between MedLegal and the Trustee. A final judgment dismissing the appeal will follow.

Thus, for the foregoing reasons, the decision of the Bankruptcy Court is **AFFIRMED**, and the appeal is **DISMISSED**. The Clerk is **DIRECTED** to **CLOSE** this case.

It is so **ORDERED**.

**SIGNED** this 30th day of January, 2024

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE